IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE VISUAL NETWORKS, INC. : Master File No. DKC 00-2073
SECURITIES LITIGATION
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this class action alleging violation of federal securities laws is Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, the motion to dismiss will be granted.

**I. Background**

The following facts are alleged in the Consolidated Class Action Complaint by Plaintiffs, filed on behalf of all persons and entities who purchased the securities of Visual Networks, Inc. between February 7, 2000 through August 22, 2000 (the "Class Period"). Visual Networks, Inc. ("Visual Networks") provides management systems for computer networks. On or about February 7, 2000, Visual Networks signed an agreement to acquire Avesta, a privately-held provider of computer management systems, in an all-stock transaction valued at approximately $415 million. Visual Networks characterized the acquisition as a "critical piece of [our] articulated strategy to become the largest service management



vendor with the industry's broadest portfolio of products and functionality" and made other optimistic statements regarding the acquisition. Despite these positive statements, the defendants deliberately concealed problems with the deal from the investment community from the outset. Visual Networks did not begin due diligence of Avesta until a month after the deal was announced, but it agreed to pay a high price for Avesta prior to beginning the due diligence process. Avesta had reported significant losses for the previous three years and had to restate its earnings for 1997, 1998, and the nine months ending September 30, 1999. The earnings restatements increased Avesta's losses by $1.45 million in 1998 and by $5.65 million for the nine month period ending September 30, 1999. One analyst described Visual Networks as paying a high price for Avesta, a "problematic and unprofitable" company.

    Visual Networks represented to industry analysts that the integration of Avesta would take three to four months, that, post-acquisition, Visual Networks would experience nearly 50% revenue growth in 2000 and 2001 and that Visual Networks would realize management synergies of $5-12 million due to the acquisition. Plaintiffs do not specifically state who made the representations, but they allege Visual Networks knew at the time it made them, or was reckless in not knowing, that the integration could not be completed within three to four months, that Visual Networks' post-

2

acquisition revenue would not grow by 50% in 2000 and 2001, and little, if any, management synergy would result from the acquisition. When news of Visual Networks' problems with the acquisition began to emerge, Visual Networks publicly issued knowing misrepresentations to keep the price of its common stock artificially inflated. In addition, Visual Networks knew that it had oversold its merchandise during the first half of 1999 and would not experience 50% revenue growth. Visual Networks had notice that the integration of Avesta could not be completed within the time frame announced in part because its recent difficulties with an acquisition of another company placed it on notice that its statements regarding the Avesta acquisition were false and misleading when they were made. Visual Networks' misrepresentations and omissions of material fact artificially inflated the price of Visual Networks' common stock.

The complaint further alleges that during this time, Scott Stouffer, Visual Networks' Chairman, President, and Chief Executive Officer, engaged in insider trading by selling substantial portions of his stockholdings at artificially inflated prices. This alleged insider trading provides additional evidence that Visual Networks' senior management was aware of Visual Networks' status, including problems with the acquisition. On July 5, 2000, Visual Networks announced that it would fall short of its expected revenues for the

second half of 2000 and for 2001 as a direct result of the problems related to the integration of Avesta, specifically acknowledging that the shortfall was attributable to "management's focus on the Avesta transaction and the resulting diversion of . . . attention from day-to-day operations." The price of Visual Networks' common stock closed at $12.00 on July 6, 2000, a 54% percent decline from $26.25 on July 5, 2000, on trading volume twenty-seven times the stock's average daily trading volume for the first half of 2000. After July 5, 2000, Visual Networks continued to conceal material information regarding its sales results. On August 22, 2000, Visual Networks announced its third quarter sales would be half its previous forecast. Visual Networks' stock, which had closed at $10.81 on August 22, 2000, fell, closing at $6.84 on August 23, 2000, a 37% percent decline in a single trading day on trading volume ten times the stock's average daily volume for the first half of 2000.

Plaintiffs filed suit under the Private Securities Litigation Reform Act ("PSLRA") asserting in Count I that Defendants Visual Networks and Stouffer violated § 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b) (1997), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (1998) and in Count II that Stouffer violated §20(a) of the Securities and Exchange Act, 15 U.S.C. § 78t(a)(1997). Defendants assert that Plaintiffs have failed to state a claim

4

asserting a violation of §10(b) and Rule 10b-5 and that they have not met the heightened pleading standard required under the PSLRA.

## II. Standard of Review

### A. Motion to Dismiss

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

To survive the motion to dismiss, Plaintiff must have alleged facts that show they are entitled to relief on their substantive

causes of action. To state claim for relief under § 10(b) and Rule 10b-5, Plaintiffs must sufficiently allege that (1) Defendants made a false statement or omission of material fact (2) with scienter[1] (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 613 (4th Cir. 1999), *citing Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 208 (4th Cir. 1994). "If a reasonable investor, exercising due care, would gather a false impression from a statement, which would influence an investment decision, then the statement satisfies the initial element of a § 10(b) claim." *Phillips*, 190 F.3d at 613. If plaintiffs allege a "fraud on the market" theory, as they have done here, "it is not necessary to prove individual reliance on the false or misleading statements", but "[b]ecause § 10(b) claims are fraud claims, the plaintiff must also satisfy the pleading requirements imposed by Fed.R.Civ.P. 9(b)." *In re Criimi Mae, Inc. Securities Litigation*, 94 F.Supp.2d 652, 656-57 (D.Md. 2000). The PSLRA "imposes additional pleading requirements on plaintiffs in securities fraud actions . . . [heightening] the requirements of Rule 9(b) for pleading scienter." *Id.* at 657. The PSLRA requires that a complaint "with respect to each act or omission alleged to

---

[1] Scienter is a "mental state embracing an intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12 (1976).

6

violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

As the court stated in *Criimi Mae*, 94 F.Supp.2d at 658, there still exists "'widespread disagreement' . . . as to what a plaintiff must show to prove scienter under the PSLRA." The second and third circuits have held that scienter can be established by either (a) alleging facts to show that defendants had both motive and opportunity to commit fraud or (b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 537 (2d Cir. 1999); *In re Advanta Corp. Securities Litig.*, 180 F.3d 525, 534-35 (3d Cir. 1999). Other circuits have held that stricter standards apply. *See In re Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) ("[A] private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct"); *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 550-51 (6th Cir. 1999) (A plaintiff may survive a motion to dismiss under the PSLRA by pleading facts that give rise to a strong inference of "simple" recklessness, but evidence of a motive and opportunity to commit securities fraud does not constitute scienter for purposes of § 10(b) or Rule 10b-5

liability); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1283 (11th Cir. 1999) (same). The Fourth Circuit has "not yet determined which pleading standard best effectuates Congress's intent," as courts have generally held that the cases before them do not meet the most lenient standard, the two-pronged second circuit test. *Phillips*, 190 F.3d at 621.

### B. Materiality under § 10(b) and Rule 10b-5

The Supreme Court has held that the test for materiality in securities fraud actions is that "a fact [is] material 'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991), citing *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). In order successfully to assert the first prong of a § 10(b) claim, the plaintiffs only need establish that "a reasonable investor, exercising due care, would gather a false impression from a statement, which would influence an investment decision, then the statement satisfies the initial element of a § 10(b) claim." *Phillips*, 190 F.3d at 613.

III. **Analysis**

   A.  **Count One - Violation of Section 10(b) of the Securities and Exchange Act and Rule 10b-5 of the Securities and Exchange Commission**

Defendants assert that Plaintiffs' claim should be dismissed because (1) they have failed to allege a statement or omission of material fact that was false or misleading when made, (2) Visual Networks had no duty to update or correct any statement at issue in this case, and (3) Plaintiffs fail to plead facts giving rise to a strong inference of scienter.

   1. **Misstatements to the Public and Press**

   Plaintiffs assert that Defendants misrepresented that:

   (1) top-line revenue of the combined company would grow by 50% in 2000 and 2001 (February 7, 2000 press release, Complaint ¶¶ 39-41);

   (2) the Avesta acquisition could reasonably be expected to produce $5-12 million in corporate synergies ([Visual Networks'] Form S-4, filed with the SEC on April 20, 2000, Complaint, ¶ 52); and

   (3) the integration would be completed in three to four months of April 1, 2000 (the February 7, 2000 press release, Complaint ¶¶ 39-41).

Paper no. 20, p. 18. Plaintiffs also allege that Defendants represented to the financial press and analysts on June 14, 2000, that Visual Networks was on track to meet projected revenues and that those representations were made to "halt the fall" of Visual Networks' stock, which had been downgraded by one analyst from

9

"buy" to "accumulate". Paper no. 20, p. 23. Defendants assert that these representations were not false at the time they were made, thus Plaintiffs are unable to establish prong one of a § 10(b) or Rule 10b-5 claim. Plaintiffs state in their complaint that the Defendants had actual knowledge that the acquisition would not take place within the stated time frame, based on their recent experience acquiring another company. This experience provides the foundation for Plaintiffs' assertion that Visual Networks knew that the projected revenue could not be achieved.

Plaintiffs assert that Visual Networks stated that integration of Avesta would occur within three to four months from April 1, 2000. However, in their opposition to Defendants' motion to dismiss, Plaintiffs concede that the February 7, 2000 press release stated that integration should be completed within three to four months of the close of the acquisition, which took place on May 24, 2000, and was announced the following day. Therefore, Plaintiffs' allegations that Defendants promised that integration would take place within three to four months from April 1, 2000 is unfounded, based upon their own admission.

The next alleged misstatement is Defendants' prediction regarding increased synergies in the Form S-4 filed with the SEC on April 20, 2000. Plaintiffs assert that the prediction is false, based on the fact that Avesta had to restate its financials in

10

order to comply with GAAP increasing Avesta's net losses. That argument intentionally overlooks the fact that Form S-4 was filed in order to acknowledge and report Avesta's significant losses. Therefore, Plaintiffs' assertion that Defendants' prediction was false is unfounded based on its own admission that Defendants restated Avesta's losses in Form S-4.

Finally, Defendants' prediction that revenues would grow by 50% in 2000 and 2001 clearly falls within the category of "'[s]oft,' 'puffing' statements [that] generally lack materiality because the market price of a share is not inflated by vague statements predicting growth." *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993). Further, "such predictions . . . about future growth are hardly material." *Id*. Because a key element of materiality is whether a person would have relied upon the information and vague growth predictions are not generally relied upon by the market, Plaintiffs are not able to assert adequately that the 50% growth prediction is a false statement.

### 2. Misstatements to Analysts

Plaintiffs also assert that Defendants' misstatements in its discussions with analysts were material, pointing to Defendants representations on June 14, 2000, to analysts that business was "on track" and that Visual Networks would meet the predictions. Plaintiffs state that the information provided to analysts did not

11

reflect that AT&T and MCI had curtailed or cancelled their purchases, that major problems were delaying the Avesta integration, and that there was a significant negative impact from the Make It Visual Partner Project ("MVIPP") project. Paper no. 17, Complaint, ¶¶ 60-67, 71-74, 80, 84-86, 91. Defendants respond that the alleged misstatements were not actionable, because they did not render an existing public statement misleading.

While "[d]efendants in securities fraud suits can be liable for intentional misrepresentations to securities analysts, if the defendants made the false and misleading statements 'with the intent that the analysts communicate those statements to the market,'" Plaintiffs are still "required to state with particularity all facts on which such belief is formed." *In re Harmonic, Inc. Securities Litig.*, 163 F.Supp.2d 1079, 1094 (N.D.Cal. 2001). Other courts have concurred, holding that "Plaintiffs claim that unidentified members of [the company's] management communicated with certain analysts, [but] [s]uch bald assertions, without specific factual support, do not satisfy . . . the PSLRA." *Greebel v. FTP Software, Inc.*, 182 F.R.D. 370, 374 (D.Md. 1998). Here, Plaintiffs are unable to identify anyone who actually spoke with the analysts on June 14, 2000, referring only to "senior management," not to any individual, including Stouffer. Plaintiffs do not point to, and the court has been unable to find,

12

a single case where statements to analysts from "senior management," and not named individuals, provide the basis for a PSLRA claim. This failure to state with particularity facts surrounding the alleged statements to analysts demonstrates that Plaintiffs have failed to allege adequately misstatements of material fact in Defendants' discussions with analysts.

### 3. Scienter

In addition, Defendants argue that Plaintiffs have failed to plead scienter by failing to state facts establishing a motive to commit fraud. Plaintiffs respond that they have adequately pled both motive and opportunity and circumstantial evidence of reckless behavior. In the Fourth Circuit, "[m]otive to commit fraud would entail 'concrete benefits that could be realized by one or more of the false statements and wrongful non-disclosures alleged.'" *In re Criimi Mae, Inc. Securities Litig.*, 94 F.Supp.2d 652, 660 (D.Md. 2000), quoting *Phillips*, 190 F.3d at 621. "To support a claim of motive based on the benefit a defendant derives from an increase in the value of his holdings, a plaintiff must demonstrate some sale of 'personally-held stock' or 'insider trading' by the defendant." *Phillips*, 190 F.3d at 622.

Plaintiffs allege in their complaint that Stouffer, along with Michael Watters and William J. Smith, sold substantial quantities of stock at artificially inflated prices during the Class Period,

13

thus committing insider trading. District courts in Maryland have required Plaintiffs alleging insider trading to do more than merely plead the allegation. "The mere pleading of insider trading without regard to either the context or the strength of the inferences to be drawn is not enough to support a strong inference of scienter." *In re e.spire Communications, Inc. Securities Litig.*, 127 F.Supp.2d 734, 743 (D.Md. 2001), citing *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 198 (1st Cir. 1999). The *e.spire* court further held that "[t]he sale of merely some stock during the Class Period is not sufficient to give rise to an inference of fraudulent intent." *Id.*, citing *In re CIENA Corp. Securities Litig.*, 99 F.Supp.2d 650, 663 (D.Md. 2000). In both *e.spire* and the instant case, the individual defendant is not alleged to have personally made any of the misrepresentations. *Id.* and Paper no. 17, Complaint, ¶62.

Plaintiffs point to trades by three individuals in management as evidence of insider trading, but the "trades relied upon by plaintiffs were not made in quantities which were suspicious enough to support a strong inference of scienter, particularly in light of the fact that none of the individual defendants are alleged to have personally made any misrepresentations." *In re e.spire*, 127 F.Supp.2d at 743. Plaintiffs allege that Stouffer, the only named defendant, sold 50,000 shares, earning more than $3,000,000, more

14

than ten times his 2000 annual salary and bonus and two and a half times the amount of shares traded by Stouffer in February of 1999. However, district courts in Maryland have looked to the percentage of stock sold as evidence of fraudulent intent, rather than income obtained. *See In re e.spire*, 127 F.Supp.2d at 743; *In re CIENA*, 99 F.Supp.2d at 663. Stouffer sold only 6.67% percent of his stock during the class period, which is not high enough to be considered "'suspicious' as was required even prior to the adoption of the PSLRA to give rise to an inference of fraud." *In re CIENA*, 99 F.Supp.2d at 663. Plaintiffs do not provide information regarding what percentage of his stock each of the other named individuals traded, but their trades are irrelevant because they are not named defendants. *See In re e.spire*, 127 F.Supp. 2d at 743. Therefore, Plaintiffs have not adequately alleged insider trading for the purpose of alleging scienter in a § 10(b) claim.

Plaintiffs also allege reckless behavior that, they assert, comprises scienter on the part of Defendants. In order to establish scienter, "[a] plaintiff must prove that the defendant acted with a conscious or reckless effort to defraud [and] [r]ecklessness requires an act 'so highly unreasonable and such an extreme departure from the standards of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant

15

must have been aware of it.'" *In re CIENA*, 99 F.Supp.2d at 658, citing *Hoffman v. Estabrook & Co.*, 587 F.2d 509, 517 (1st Cir. 1978). This court has held that:

> There is a "significant burden on the plaintiff in stating a fraud claim based on recklessness," *Chill v. General Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996), and a plaintiff's allegations "must be based on a substantial factual basis in order to create a 'strong inference' that the defendant acted with the required state of mind," *Phillips*, 190 F.3d at 621.

*In re Criimi Mae*, 94 F.Supp.2d at 661. In the instant case, Plaintiffs "have failed to allege specific facts demonstrating that [the statements] gave rise to a 'strong inference' that [Defendants] acted with a reckless or conscious effort to defraud." *Phillips*, 190 F.3d at 621. This court held that similar asserted "facts, standing alone, are not sufficient to raise a strong inference of scienter." *In re Criimi Mae*, 94 F.Supp.2d at 661. Because Plaintiffs are not able to state with specificity who made the alleged misleading statements that resulted in the inflated stock price, they are not able to allege specific facts regarding these statements.

In addition, Plaintiffs have failed to show motive and opportunity required under the recklessness standard. "In order to demonstrate motive, [plaintiffs] must show 'concrete benefits that could be realized by one or more of the false statements and

16

wrongful nondisclosures alleged.'" *Id.*, *citing Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). Plaintiffs allege the profits from the sale of the stock are the basis of Defendants' motive, but the stock sale is a small percentage of the total stock owned, thus the stock sale is insufficient to establish motive. *See In re e.spire*, 127 F.Supp.2d at 743; *In re CIENA*, 99 F.Supp.2d at 663. Therefore, Plaintiffs are unable sufficiently to plead prong two of a § 10(b) or Rule 10b-5 claim and are unable to state a claim for relief under § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

### B. Count Two - Section 20(a) of the Securities Exchange Act

Plaintiffs' failure to state a claim for a primary securities fraud violation precludes a finding of control person liability. *In re Cryomedical Sciences, Inc. Securities Litig.*, 884 F.Supp. 1001, 1011 (D.Md. 1995). The court will therefore dismiss Plaintiffs' claim for violation of § 20(a) of the Exchange Act.

### IV. Conclusion

For the foregoing reasons, the Amended and Consolidated Class Action Complaint will be dismissed. A separate order will be entered.

                                                     */s/ Deborah K. Chasanow*
                                                     DEBORAH K. CHASANOW
                                                     United States District Judge